IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. H-99-721-3 |
| | § | |
| BRANDON CREIGHTON SAMPLE | § | |

**MEMORANDUM AND ORDER**

The Court has considered Defendant Brandon Creighton Sample's Motion for Modification of Restitution Payment Schedule [Doc. # 236] ("*Sample's Motion*"). The Government has filed a response in opposition to Sample's Motion [Doc. # 238], and Sample has replied [Doc. # 243]. The Court is unpersuaded by the legal or factual arguments in Sample's Motion and it is denied for reasons set forth below.

**I.     BACKGROUND AND PROCEDURAL HISTORY**

Sample and several others were indicted by a federal grand jury in this district and charged with defrauding the United States Postal Service ("USPS") through a scheme that entailed the purchase of large quantities of postage stamps with counterfeit and stolen checks. Sample pleaded guilty to charges of conspiracy (18 U.S.C. § 371); conspiracy to launder funds (18 U.S.C. § 1956(h)); possession of counterfeit securities (18 U.S.C. § 513(a)); possession of stolen mail matter (18 U.S.C. § 1708); and interstate transportation of stolen securities (18 U.S.C. § 2314). On March 1, 2001, the Court sentenced Sample to serve 168 months of imprisonment in the United States Bureau of Prisons ("BOP") and

ordered him to pay a special assessment of $1,800.[1]

At Sample's sentencing the Court found that losses to the USPS totaled $275,000. Accordingly, the Court ordered Sample to pay restitution to the USPS in that amount. The restitution obligation is joint and several with the orders of restitution imposed on two other individual co-defendants, Nikkia Lashante Kilgore and Robert C. Flowers, where were charged and convicted in companion cases. *United States v. Kilgore*, Crim. Case No. H-00-115 (S.D. Tex.); *United States v. Flowers*, Crim. Case Nos. H-00-089, H-00-197, and H-00-289 (S.D. Tex.). The Court considered at the time of sentencing the loss to the USPS as well as Sample's financial circumstances (to the limited extent the latter was legally relevant), and crafted the restitution obligation accordingly.

Sample did not object to the order of restitution at the time of sentencing, presumably because the Court adopted a restitution figure lower than the amount sought by the Government. In fact, Sample agreed to that ruling and he did not challenge the restitution order on appeal. After Sample complained about attempts by the BOP to collect his restitution while incarcerated, the Court issued an order and an amended judgment clarifying its comments at sentencing to mean that it did not intend to preclude the BOP from collecting the restitution during Sample's incarceration [Docs. # 131, # 132]. The judgment was affirmed by the United States Court of Appeals for the Fifth Circuit in an unpublished opinion. *See United States v. Sample*, No. 01-20261 (5th Cir. March 11, 2002) (per curiam).

The record reflects that payments on Sample's special assessment balance were

---

[1] Under current BOP regulations, Sample will be in custody until at least 2012.

completed on March 1, 2006. Sample, who remains in custody of the BOP, has now filed a motion requesting "that the restitution payment schedule in this case be modified to permit satisfaction of the debt through a combination of payments at specified intervals and in-kind payments." *Sample's Motion*, at 1. Sample advances several reasons that he believes the Court should "modify [his] restitution payment schedule to permit repayment in the manner requested." *Id.* at 5. Those reasons are outlined briefly below.

The first reason given in support of the proposed modification is "Sample's lack of money," based on the low pay for work performed while incarcerated and the increase in various fees for services and supplies at the prison (such as the cost of postage stamps and medical visits). *Sample's Motion*, at 5. Second, Sample argues that the proposed payment schedule would be commensurate with payments made by his co-defendants.[2] *Id.* Sample notes that Kilgore reportedly made only nominal payments of about $50.00 a month during her three-year term of probation. *Id.* Sample believes that Flowers made comparable payments, but Sample acknowledges that he does not know what payments the latter made, if any. *Id.* Reasoning that his payments should be reduced, Sample points out that, unlike him, neither Kilgore or Flowers are incarcerated. *Id.*

As an additional reason offered for modifying the restitution schedule to allow in-kind

---

[2]   As noted above, only Kilgore and Flowers were made jointly and severally liable for the restitution amount. Sample notes that co-defendant Billy Ray Arrington has no restitution obligation, and that he has made only nominal payments toward the $2,500 fine and $100 special assessment imposed in the judgment. *See United States v. Arrington*, Crim. Case No. H-99-721-2 [Doc. # 154]. He notes also that no fine was imposed for co-defendant Terrance Poe, who was only ordered to pay a $100 special assessment following his guilty plea. *See United States v. Poe*, Crim. Case No. H-99-721-1 [Doc. #80].

payment through volunteer work, Sample explains that he "looks forward to performing community service – working with the homeless, the underprivileged, and otherwise 'giving back' to a society from which, quite frankly, he took so much." *Sample's Motion*, at 6. Acknowledging his "leadership role in the offense," *id.*, Sample argues that his proposed schedule of 1000 hours community service – "a repayment condition that no other co-defendant bears" – would be "consistent with the Court's finding that Kilgore and Flowers were relatively minor players in the scheme by allowing Sample to bear the brunt of the misconduct through his repayment efforts." *Id*. at 7.

In addition, Sample contends that the proposed new payment schedule would allow him to "save a little money" for his release from prison, which is especially important to him because he has "lost a lot of weight and will need to buy a few new clothes, a used vehicle, and other essentials to survive outside of prison." *Sample's Motion*, at 7. Finally, Sample argues the new "repayment schedule" will further his "positive change" in attitude since sentencing. *Id.* Sample states that he now accepts responsibility for his actions, that his conduct "unquestionably constituted money laundering," and he acknowledges that he was "the driving force behind the entire scheme" to defraud the USPS.[3] *Id.*

Sample also contends that a modification is appropriate because he has the "consent

---

[3] As an additional reason, Sample notes that a modification to the restitution payment schedule will afford an opportunity to correct two minor "technical errors" in the Amended Judgment [Doc. # 132]. Sample's Motion, at 7. Sample points out, correctly, that the Amended Judgment erroneously names the "United States Postal *Services*" as the restitution payee, as opposed to the "United States Postal *Service*." Sample notes further that the Amended Judgment fails to accurately reflect the reduction of Kilgore's restitution amount from $404,830.49 to $275,000. Neither of these insignificant errors warrants a change in the restitution payment schedule.

of the victim in this case, the United States Postal Service." *Sample's Motion*, at 1. He states that on August 3, 2005, at 12:47 p.m., he spoke with U.S. Postal Inspector Devin Mowery, who was the investigator in this case. According to Sample, Inspector Mowery agreed to allow Sample to satisfy the restitution order through the payment of $2,500 in installments, with the remainder of the balance to be satisfied by performing 1,000 hours of community service while on supervised release. Sample asserts that Inspector Mowery, in agreeing to the proposed modification, seemed to understand Sample's lack of resources and the slim likelihood that the substantial amount of restitution ordered in this case would ever be paid unless it was satisfied through other means (*i.e.*, community service). Sample acknowledges, however, that Inspector Mowery advised him to contact the United States Attorney's Office ("USAO") about the matter. Sample contends, nevertheless, that Inspector Mowery had authority to act and did act on behalf of the USPS to agree to the proposed modification of Sample's restitution payments.

The Government has filed a response in opposition to Sample's proposed modification of the restitution payment schedule. Sample has filed a reply, along with several other assorted motions.[4] For reasons discussed further below, the Court concludes that a modification of the restitution payment schedule is not warranted.

---

[4] Sample also seeks appointment of counsel to pursue the modification of his Motion and to proceed *in forma pauperis* for all proceedings in this Court and on appeal [Doc. #239, #241]. Sample also seeks leave to appear by telephone. [Doc. #240] so that he will not miss any of the college courses in which he is currently enrolled. These motions are denied. Sample is very articulate, as evidenced by the pending motions and his arguments asserted at various points in this case. There are no fees necessary for Sample to proceed in the district court and there is no need for a hearing.

## II. DISCUSSION

### A. Modifications of Restitution Orders Under MVRA

The restitution order entered in this case is governed by the Mandatory Victim Restitution Act of 1996 ("MVRA"), Pub. L. No. 104- 132, 110 Stat. 1227, codified as amended at 18 U.S.C. §§ 3556, 3663-3664. The MVRA requires that a court order restitution in the full amount of each victim's losses as determined by the court "without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A). The MVRA further requires the court to specify in the restitution order "the manner in which, and the schedule according to which, the restitution is to be paid" in consideration of the defendant's resources and other assets, projected earnings and other income, and any financial obligations. 18 U.S.C. § 3664(f)(2).

Consistent with the Sentencing Reform Act of 1984, 18 U.S.C. § 3553 *et seq.*, courts have discretion at the time of imposing sentence to craft a restitution order directing the defendant to make a "single lump-sum payment, partial payments at specified intervals, in-kind payments, or a combination of [these kinds of] payments." 18 U.S.C. § 3664(f)(3)(A). According to the MVRA, an "in-kind payment" may be in the form of:

> (A)   return of lost property;
>
> (B)   replacement of property; or
>
> (C)   if the victim agrees, services rendered to the victim or a person or organization other than the victim.

18 U.S.C. § 3664(f)(4).

The Court entered the judgment containing the restitution payment order in Sample's


case in March of 2001. That judgment is final. Sample now seeks to change the restitution order to reduce the $275,000 financial obligation to $2,500, paid in installments, plus 1,000 hours of unspecified community service to unidentified organizations. Once a restitution payment order is entered, however, modifications are allowed only in limited instances. In that regard, Sample's request for a modification requires the Court to determine whether there has been a "material change" in his economic circumstances.

The MVRA provides that, upon notice of "any material change in the defendant's economic circumstances" that might affect his ability to pay restitution, a court may "adjust the payment schedule, or require immediate payment in full, as the interests of justice require." 18 U.S.C. § 3664(k). A "material change" in a defendant's economic circumstances as will warrant modification of a restitution order under § 3664(k) is determined "by an objective comparison of a defendant's financial condition before and after a sentence is imposed." *United States v. Grant*, 235 F.3d 95, 100 (2d Cir. 2000). Such a material change must be "immediate" to the defendant, *United States v. Vanhorn*, 399 F.3d 884, 886 (8th Cir. 2005), and "*bona fide.*" *Cani v. United States*, 331 F.3d 1210, 1215 (11th Cir. 2003).

Sample makes absolutely no legally cognizable showing of a material change in his economic circumstances. Sample presents no evidence of additional debts that affect his ability to pay restitution and he cites no interim change in his financial situation since the judgment was imposed. *See, e.g., Grant*, 235 F.3d at 100-01 (noting that the availability of "unfrozen" funds was a material change that justified modifying the restitution order in the

government's favor). Fees or expenses that Sample has incurred while incarcerated affect the entire prison population, not just him, and do not constitute "material change" in Sample's personal financial condition. Likewise, a desire to save money for anticipated expenses upon release from custody is not a "material change in the defendant's economic circumstances." *United States v. Surber*, 94 Fed.Appx. 355, 356, 2004 WL 729178 (7th Cir. 2004).

Sample's arguments of changed circumstances are factually and legally unpersuasive. Sample is highly intelligent and literate, as evidenced by his numerous pleadings filed in this case before and since his incarceration. Sample has the same earning capacity upon his release from custody that he had when he was sentenced. He does not otherwise demonstrate that his economic circumstances have changed in any way since the imposition of his sentence, and thus his present financial status is no different from that contemplated by the Court when it imposed the restitution order. Accordingly, Sample is not entitled to relief from the restitution payment order under 18 U.S.C. § 3664(k).

**B**     **Alleged Agreement by the USPS**

Sample, relying on 18 U.S.C. § 3664(k), alleges further that a modification of the restitution payment schedule is warranted because Inspector Devin Mowery of the USPS "approved" Sample's oral proposed reduction of the restitution order from $275,000 to $2,500 plus 1000 hours of unspecified community service. Sample also relies on 18 U.S.C. § 3664(f)(3), which specifies different forms of restitution payments that a court may order, including "in-kind payments, or a combination of payments at specified intervals and in-kind

payments," and defines an "in-kind payment" as "(A) return of property; (B) replacement of property; (C) or, if the victim agrees, services rendered . . . ." 18 U.S.C. § 3664(f)(4). Sample's argument is rejected.

Although restitution is intended to compensate victims, an order of restitution is part of a criminal penalty meant to have strong deterrent and rehabilitative effect. *See Kelly v. Robinson*, 479 U.S. 36, 49 (1986). Sample cites no authority showing that a restitution order may be reduced or satisfied, as contemplated by his proposed modification, as the result of a private settlement with the victim. *See United States v. Twitty*, 107 F.3d 1482, 1493 n.12 (11th Cir. 1997) (rejecting the defendant's argument that a settlement with the RTC absolving future liability for civil claims precludes a restitution order); *see also United States v. Maestrelli*, 156 Fed.Appx. 144, 2005 WL 3078597 (11th Cir. 2005) (rejecting the defendant's proposed modification to a court-ordered restitution schedule based on an argument that the defendant had entered into a settlement for partial payment with the victim's assignee).

Even assuming that modification based on a settlement were appropriate, Sample fails to show that the victim in this case agreed to any such settlement in this instance. The MVRA defines a "victim" as the "person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered." 18 U.S.C. § 3663A(a)(2). It is undisputed that the victim of fraud in this case is the USPS. *See United States v. Lincoln*, 277 F.3d 1112 (9th Cir. 2002).

As a victim, the USPS has the ability to accept in-kind payments of restitution *if* it,

the USPS, agrees to such a modification. 18 U.S.C. § 3664(f)(4)(c). There is no evidence that the **USPS** has ever agreed to the modification Sample proposes. Sample's motion demonstrates, at most, that the only person who indicated a possible agreement to his proposal is an individual postal inspector, Devon Mowery. Significantly, Inspector Mowery has not been shown to have any authority to decide this issue for the victim, the USPS, let alone authority to bind that entity.[5]

The USPS has the power to "settle and compromise claims by or against it." 39 U.S.C. § 401(8). Specifically, it is the USPS Inspector General who has the authority to enter into contracts or other arrangements with public agencies and with private entities, and to make such payments as may be necessary to carry out the duties and responsibilities of the Office of Inspector General. 39 C.F.R. § 230.1(h). The Inspector General has oversight responsibilities for all activities of the Postal Inspection Service of which postal inspectors are members. *Id.*, § 230.1(e). Thus, it is the Inspector General who has the authority to agree on behalf of the USPS to a modification of a restitution order. The Inspector General may delegate to certain employees such powers, duties, and responsibilities, as necessary and

---

[5] The Government relies on an affidavit from Houston Division Inspector in Charge Manuel Gonzalez-Latimer, who states he objects to the proposal. *See* Manuel Gonzalez-Latimer Affidavit, Exhibit "J" to Government's Response [Doc. #238]. Sample moves to strike the Gonzalez-Latimer Affidavit [Doc. # 242] on the ground that the affidavit fails to satisfy legal requirements because it lacks the statutorily required language in 28 U.S.C. § 1746 or a *jurat* (*i.e.*, notarization by a competent person). Sample's technical challenge to the form of this Affidavit is well-founded. This defect, nevertheless, is immaterial for reasons explained in the text.

The Government is *admonished* that, in future matters, evidence should be submitted in admissible form. Moreover, evidence shall be sufficiently detailed to be of probative value.

appropriate for the proper functioning of the Office, 39 C.F.R. § 230.1(f), but all delegations of authority must be officially documented. *Id.,* § 222.3(a).[6]

There is no evidence in the record that the USPS Inspector General delegated to individual postal inspectors such as Inspector Mowery the authority to enter into a binding agreement concerning the USPS with any criminal defendant about restitution or any other topics.[7]  Indeed, the law and regulations suggest the contrary.  By law, postal inspectors are given authority to investigate criminal matters related to the USPS, and in that capacity have the explicit authority to:

(1)   serve warrants and subpoenas issued under the authority of the United States;

(2)   make arrests without warrant for offenses against the United States committed in their presence;

(3)   make arrests without warrant for felonies cognizable under the laws of the United States if they have reasonable grounds to believe that the person to be arrested has committed or is committing such a felony;

(4)   carry firearms; and

(5)   make seizures of property as provided by law.

---

[6] Authority may be further delegated unless prohibited by law, a regulation that expressly prohibits further delegation, or terms of delegation.  39 C.F.R. § 222.3(e)(4).

[7] Sample contends that evidence of Inspector Mowery's authority is the fact that the Assistant United States Attorney ("AUSA") consulted with him during Sample's sentencing about whether to object to the Court's proposed restitution amount.  This argument is unpersuasive.  The fact Inspector Mowery attended Sample's sentencing as the client representative and was consulted during the proceeding does not establish that Mowery had authority to make binding decisions on changing the form or amount of Sample's restitution five years after the sentence was imposed.  The USPS was represented on the record by the AUSA.

18 U.S.C. § 3061(a).[8]  Sample cites nothing to establish that an individual postal inspector has the power or authority to bind the USPS to agreements to alter the form of restitution in criminal cases.

In any event, Sample's allegations merely establish that Inspector Mowery did not object to the proposed modification of the method of restitution.  The record does not establish that Inspector Mowery believed he had any authority to bind the USPS in regard to restitution obligations or that he told Sample that he had the ability.  If anything, Inspector Mowery's comments indicated that he believed he lacked such authority because he told Sample to contact the United States Attorney's Office about the matter.  *Sample's Motion*, at 4 ("Inspector Mowery advised Sample, though, that he [Sample] should also contact the U.S. Attorney's Office ("USAO") about the matter").  Thus, Sample fails to demonstrate consent on the part of the victim or that there is any other basis to warrant modification of the restitution payment order.

### III.    CONCLUSION AND ORDER

For the foregoing reasons, it is therefore

**ORDERED** that Sample's request to modify his restitution order [Doc. # 236] is **DENIED**.  It is further

**ORDERED** that Sample's requests for counsel [Doc. # 239], to appear by telephone for a hearing [Doc. # 240], and for leave to proceed *in forma pauperis* in this Court [Doc.

---

[8]   These powers are only exercised in the "in the enforcement of laws regarding property in the custody of the USPS, property of the USPS, the use of the mails, and other postal offenses. 18 U.S.C. § 3061(b).

# 241] are **DENIED**. It is further

**ORDERED** that Sample's motion to strike an affidavit from the government's response [Doc. #242] is **GRANTED**. It is further

**ORDERED** that Sample's request to amend his Judgment of Conviction to correct the spelling of the United States Postal Service and the amount of restitution imposed on co-conspirator Kilgore in Criminal Case No. H-00-115 is **GRANTED**. The United States Probation Office shall prepare promptly an amended judgment for the Court's signature.

SIGNED at Houston, Texas, this **17th day** of **July, 2006.**

_____
Nancy F. Atlas
United States District Judge